Turley, J.
delivered the opinion of the court.
Robert Duncan was indicted at the April term, 1845, of the Criminal Court at Nashville, under the act of 1833, ch. Ill, passed for the purpose of more effectually preventing the owners of steamboats and stage coaches, from carrying off slaves, without the knowledge or consent of the owners.
*149 The 1st section of the act, provides, that “no stage contractor, or driver, or owner, or captain of any steamboat, or other water craft, shall receive, and carry from any place in the State, to any other place within, or out of the State, any black or colored person, unless said colored person shall produce the certificate of the clerk of the court of the county from which said stage or steamboat is about to depart; which certificate shall be under the seal of said court, stating that the said clerk has known said colored person, and that he or she is free, or has generally been reputed to be free, or that it has been proved to him, by respectable witnesses known to him, that said colored person is free, or generally reputed so; or if said colored person, be actually a slave, then and in that case, a verbal or written authority from the owner or owners shall be sufficient.”
The 2d section provides, that “if any of the persons mentioned in the 1st section, who shall be guilty of a violation ofits provisions, shall be subject to indictment or presentment, in the County or Circuit Court of the county in which said colored person was so received, and upon conviction thereof, shall be fined in a sum, not less than two, nor more than five hundred dollars, and be imprisoned not less than three, nor more than six months: and moreover, shall be liable to an action of trover, at the suit of the owner or owners of any slave or slaves so received or carried away.”
This statute is highly penal; and is, therefore entitled to fair, but not latitudinous construction.
The evil intended to be remedied, was one which resulted, no doubt, out of the conflict of opinion, in relation to slavery, which has for years existed between our citizens of the free and slave States, and a disposition on the part of the fanatical portion of the former, to furnish facilities and inducements to the slaves of the latter, to escape from their owners. These facilities are greatly increased on our stage lines and water courses, by the easy mode of concealment of the absconding slave, and the rapidity with which he can be thus carried beyond the pursuit of the owner. It was, therefore, deemed proper to inflict heavy penalties upon those who might furnish such facility to an absconding slave.
*150 But suiely there could have been no reason, or design, to have inflicted such penalties upon a person, whose boat or stage had been the means of affording the facility without his knowledge?
It is a sacred principle of criminal jurisprudence, that the intention to commit the criméfis of the essence of the crime, and to hold, that a man shall be held criminally responsible for an offence, of the commission of which he was ignorant at the time, would be intolerable tyranny.
It is right and proper, that.the commander of a steamboat, who receives and carries .off the slave of another, should be severely punished. But to hold, that he shall be so punished, when the boat has received him and carried him off without his knowledge or consent, would be shocking to common sense.
By our law, a man who harbors a slave, is severely punished. But would any one think of punishing him, because a slave clandestinely entered and concealed himself in his house? Surely not. Then, upon what principle can the commander of a steamboat be punished criminally because a slave has entered his boat without his knowledge or consent, and been carried off by it. Surely by nothing but positive enactment. If this enactment existed, we should have to enforce it, notwithstanding our conviction of its injustice. But, we, upon a review of the statute, and a fair construction of it, feel satisfied, that it has not been so enacted.
The statute does not punish for the mere act of carrying off, but punishes for the receiving and carrying off. This makes the punishment consistent with justice, for the word receiving, necesSarily implies, an act knowingly done; for no man can receive, without his knowledge and consent. Aman receives a bribe; placing money in his pocket, without his knowledge, is not such a reception.
This statute, then, requiring, that there shall be a reception and carrying away of the slave, to constitute the offence provided against, both must be alledged and proven before there can be a conviction. The carrying away would be, no doubt, 2>rima facie evidence of the reception.
This bill of indictment does not alledge, that the negro slave was received by the commander of the boat, but only that he *151 was unlawfully carried away; this is not a sufficient allegation under the statute. The word unlawfully, cannot supply the defect; for the carrying away, though without knowledge, was not a legal act; and, therefore, if it be characterized by such an expression, must be called illegal.
The amended statute, passed at the same session, does not remedy this defect. It is only to be considered in the character of a legislative construction of the first statute. This amendment is to be found in the session acts of 1833, ch. 62. It provides, that when a slave conceals himself on board of the boat, and is carried off without the knowledge or consent of the commander, he shall not be liable to the pains and penalties of the statute, provided he deposit him in the first and nearest county jail to which he may be after he discovered the fact, and give public notice thereof in some convenient newspaper.
This amendment does not create an offence, or inflict a penalty. And if the construction given by it to the previous statute be erroneous, as we think it is, it does not enlarge the provisions of the first.
We are the more satisfied with the conclusion we have arrived at, in this case, because we are conviced, from the proof, that the defendant in this case has been guilty of no misconduct. He did not receive the negro, and when he ascertained that he was on board of his boat, he made use of all reasonable exertions to secure him, and he fled and could not be overtaken. The defendant has then been in no default.
The bill of indictment being defective, the j’udgment will be arrested, and the defendant discharged.